UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA Y.,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>Kilolo KIJAKAZI, Commissioner of Social Security,<br><br>　　　　　　　　　　Defendant. | Case No.: 21-cv-0814-AGS<br><br>**ORDER ON SUMMARY-JUDGMENT MOTIONS (ECF 13 & 16)** |

　　　　The issue in this Social Security appeal is whether the judge gave specific, clear, and convincing reasons for discounting claimant's hand-pain testimony. He did not.

## BACKGROUND

　　　　In 2016, Theresa Y. quit her job as a casino dealer because the "pain level[] [in her hands] was so high" that it was taking a large "dosage of narcotics to get through the shift." (AR 84–85.) When she applied for Social Security disability benefits, the agency doctors concluded that she could still perform light work, so her application was denied. (AR 124–25, 169–71.) Theresa ultimately testified before an Administrative Law Judge about the severity of her pain and the attendant limitations. (*See* AR 93, 96, 99–103.)

　　　　After the hearing, the ALJ determined that Theresa could perform light work with frequent handling and reaching and no forceful gripping or grasping. (AR 48.) While she could no longer work as a gambling dealer, the ALJ concluded that Theresa could do other work. (AR 49–51.) In so ruling, the ALJ deemed Theresa's testimony about the severity of her hand pain "not entirely consistent with the medical evidence and other evidence in the record." (AR 47.) The ALJ thus denied her disability request. (AR 50.)

## DISCUSSION

　　　　Theresa appeals the ALJ's decision to reject her testimony.

A. **Subjective Symptom Testimony**

In evaluating the credibility of subjective symptom testimony, the ALJ must determine "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the . . . symptoms alleged." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). If so, and absent evidence of malingering, the ALJ may only reject the claimant's testimony about symptom severity if the ALJ offers "'specific, clear and convincing reasons' for the rejection." *Id*. The ALJ must specifically identify "which symptom testimony is not credible and what facts in the record lead to that conclusion." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). Finally, the ALJ "must provide sufficient reasoning" to allow this Court to perform its own review. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

The ALJ here concluded that "the medical opinions" and "the clinical findings, diagnostic reports, and treatment history as shown in the objective medical records" undermined Theresa's "allegations of disabling physical limitations." (AR 47.) The question is whether the ALJ gave sufficient reasons to support that conclusion.

   1. *Objective Medical Evidence*

The ALJ contrasted Theresa's testimony about her disabling symptoms with medical evidence that failed to corroborate those complaints. (*See* AR 47–48.) While that is a proper criticism, "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by the medical evidence." *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Kittridge v. Kijakazi*, No. 21-16178, 2022 WL 2965961, at *1 (9th Cir. July 27, 2022) (same). So this reason alone cannot justify discounting Theresa's testimony.

   2. *Medical Opinions*

The ALJ asserted that the "medical opinions discussed further below contravene the degree to which the claimant alleges she is disabled." (AR 47.) But in his later discussion, the ALJ never identified any specific opinion that undercuts Theresa's allegations of disabling pain. (AR 48–49.) In fact, the ALJ even appeared to credit Theresa's pain

2

testimony *over* the contrary medical opinions. (*See* AR 49.) For example, the ALJ concluded that the agency medical consultants' opinions were "not entirely persuasive," in part because they were "inconsistent" with Theresa's "apparent difficulties with forceful grasping and gripping." (*Id*.) And the ALJ ultimately assessed greater restrictions on forceful gripping than the various medical examiners and consultants endorsed. (*See id*.; *compare* AR 46 (ALJ assessing "light work" with "*no* forceful gripping or grasping" (emphasis added)), *with* AR 122 (state-agency medical consultants endorsing occasional grasping, with no forcefulness restriction), AR 158 (same), AR 414 (orthopedic examiner endorsing frequent grasping, with no forcefulness restriction), *and* AR 543 (orthopedic examiner endorsing no restrictions whatsoever on the left hand).)

An ALJ must articulate "specific reasons" so that this Court may "review the ALJ's decision meaningfully . . . [and] ensure that the claimant's testimony was not arbitrarily discredited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). And this Court is "constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The cursory—and contradictory—discussion of the medical-opinion-based rationale for discounting Theresa's testimony "falls short of meeting the ALJ's responsibility to provide . . . 'the reason or reasons upon which' his adverse determination is based."[1] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014)

---

[1] The ALJ's only other arguably substantive discussion of his medical-opinion-based rationale was the statement that "there is no other evidence definitively challenging the validity or accuracy of [the orthopedic consultative doctors'] examinations." (AR 49.) But the ALJ failed to explain how these examinations bolstered the consulting doctors' opinions. An accurate test can weaken or strengthen a doctor's opinion, but only if the ALJ *explains* how it does so. *See Timothy S. v. Comm'r, Soc. Sec. Admin.*, No. 3:19-CV-01644-MK, 2020 WL 7755691, at *4 (D. Or. Oct. 26, 2020) (criticizing an ALJ's reliance on "negative [nerve] tests" to reject a doctor's "fingering limitation" when the ALJ failed to explain how the tests undermined the doctor's opinion), *adopted*, No. 3:19-CV-01644-MK, 2020 WL 7753688 (D. Or. Dec. 29, 2020). At any rate, regardless of the examination results, the ALJ never explained how the doctors' opinions contradicted Theresa's testimony.

3

(quoting 42 U.S.C. § 405(b)(1)). So this is not a clear and convincing reason to discredit Theresa's testimony.

### 3. *Treatment History*

Next, the ALJ reasoned that Theresa's "treatment history underscores the non-disabling nature of her impairments" and pointed to her hesitancy about surgery and the relief she felt from "her analgesic regimen." (AR 48.) First, the ALJ noted that Theresa "does not want to proceed [with an operation] unless surgery is really necessary." (AR 48.) By highlighting this quotation, the ALJ may have been suggesting that Theresa's pain was "not as all-disabling" as she insists, which is a "permissible inference" if she "did not seek an aggressive treatment program." *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). But that inference is not "reasonably drawn from the record." *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Theresa tried a slew of treatments, including "acupuncture," "steroid injections," "hypnosis," "heat," "medical marijuana," and "compression therapies." (AR 103–04.) With her pain persisting—and whatever her initial qualms about surgery—she testified that she has been, and still is, pursuing an operation. (AR 85–86 (describing her efforts to see "three hand specialists in southern California" and how she is "going to have to go either to northern California or leave the state to try to find a surgeon").)

Or perhaps the ALJ underscored Theresa's initial reluctance to undergo surgery to imply that she failed to seek more aggressive treatment. An ALJ may reasonably conclude that complaints of disabling pain are "unjustified or exaggerated" when a claimant "fails to seek treatment, or fails to follow prescribed treatment, for the pain." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). But Theresa has been pursuing surgery. (AR 85–88.) And she explained at length all her reasonable difficulties scheduling surgery, from unrelated medical complications to insurance issues. (*See* AR 87–89, 440, 491, 501, 516.) For instance, one doctor explained that a planned surgery was cancelled due to Theresa's uncontrolled "hypothyroidism," and the next orthopedic specialist she was referred to also

"declined to operate on her." (AR 501.) As the ALJ himself noted, two orthopedists refused to operate "due to high nerve damage risk." (AR 48.)

The ALJ's reliance on the success of Theresa's pain-medication regimen seems equally suspect. Pain that is "controlled effectively with medication" is not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). But neither Theresa nor her physician asserted Theresa's pain was "controlled effectively." Rather, on two occasions Theresa's physician recorded that her pain was "relieved" by medication, yet still referred her to specialists. (AR 422, 425 (orthopedics referral for "wrist pain"), 485, 488 (hand-specialist referral for "wrist and hand pain").) If her pain was effectively controlled, it is doubtful that she would continue to see new pain specialists as well as scheduling a surgery—surgery Theresa did not want unless it was "really necessary" (AR 432; *see, e.g.*, AR 516 (prescribing surgery "to remove the accessory muscle").) While medications may have relieved her symptoms, the inference that analgesics effectively controlled her pain is not "reasonably drawn from the record." *See Batson*, 359 F.3d at 1193.

Thus, Theresa's treatment history is not a clear and convincing reason to discount her pain testimony.

**4.** *Activities of Daily Living*

Theresa also contends that the ALJ ignored evidence from her functional report and mischaracterized her ability to partake in daily living activities. (ECF 13, at 11.) But it does not appear that the ALJ relied on this basis to discredit her symptom testimony. (AR 48.) Instead, to support his conclusion that Theresa's obesity did not warrant greater limits, the ALJ noted that Theresa "is reportedly capable of caring for her disabled daughter, preparing meals for her family, and doing light cleaning and laundry." (AR 48.) This discussion does not appear to be linked in any way to the ALJ's conclusions about her hand-pain severity.

Even if the ALJ did discount Theresa's testimony based on her daily living activities, he did not articulate specific, clear, and convincing reasons to do so. "Inconsistencies

between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination." *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). But the ALJ must identify "*which* daily activities conflicted with *which* part of Claimant's testimony." *Id.* at 1138. The Court may not "speculate as to the grounds for the ALJ's conclusions." *Treichler*, 775 F.3d at 1103. Without further elaboration of how Theresa's caregiving, cooking, and cleaning abilities contradicted her pain allegations, the Court cannot "review the ALJ's decision meaningfully." *Brown-Hunter*, 806 F.3d at 494. So, assuming for the sake of argument that the ALJ relied on this ground, it is not a clear and convincing reason.

Thus, the ALJ erred by failing to articulate enough specific, clear, and convincing reasons to discount Theresa's subjective pain testimony.

**B.     Harmless Error**

The next question is whether that legal error was harmless. An error is harmless if "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citation omitted). Fully crediting Theresa's testimony, the ALJ would have assessed limitations accommodating these symptoms: inability to "control her grip," "drop[ping] things all the time," lack of "feeling in her hands," "constant pain in her hands," "shoot[ing] nerve pain that radiates up her arm," and "swelling in her hands . . . ." (AR 47.) According to the vocational expert, there are no jobs for the "rare use of gross handling and fine manipulation bilaterally." (AR 107.) Thus, fully crediting her testimony, a reasonable ALJ could have found her disabled.

**C.     Remedy**

Given this harmful error, Theresa seeks immediate payment of benefits. (ECF 13, at 13.) When "the record has been fully developed and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). But "[r]emand for further administrative proceedings is appropriate if enhancement of the

record would be useful." *Id*. The Court must "assess whether there are outstanding issues requiring resolution *before* considering whether to hold that the claimant's testimony is credible as a matter of law." *Treichler*, 775 F.3d at 1105. Remand for immediate payment is only appropriate when the record as a whole "leaves not the slightest uncertainty as to the outcome of the proceeding." *Id.* at 1101.

More development is needed to resolve the conflicting evidence in the record. For instance, it is unclear to what extent Theresa's pain is managed with medication. The ALJ concluded that her pain was "relieved" by medication. (AR 48 (citing AR 422).) But Theresa testified that the narcotics themselves prevent her from working due to the high dosage and related side effects. (AR 85, 99; *see also* AR 331 (recounting difficulties following spoken instructions when on pain medications).) Further record development is needed to determine whether Theresa's pain is appropriately managed by more conservative treatments.

And the Court is not convinced that using its discretion to remand for benefits would be appropriate in this case even if further development were unneeded. Both examining physicians who tested claimant found she still retained substantial strength, mobility, and capability with her upper extremities notwithstanding her complaints of pain. (*See* AR 412, 414, 539, 543.) So, this Court has some "uncertainty as to the outcome of the [remand] proceeding." *See Treichler*, 775 F.3d at 1101.

## CONCLUSION

Theresa's summary-judgment motion (ECF 13) is granted, and the Commissioner's cross-motion for summary judgment (ECF 16) is denied. The case is remanded for further proceedings.

**REVERSED and REMANDED.**

Dated: August 22, 2022

Hon. Andrew G. Schopler
United States Magistrate Judge